# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Sub-Master Docket No. 17-9001L

(Filed: February 1, 2018)

| | |
|---|---|
| IN RE UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | |
| THIS ORDER RELATES TO:<br><br>ALL UPSTREAM CASES | |

## CASE MANAGEMENT ORDER

Pending before the court are competing proposed Case Management Orders, ECF Nos. 24 and 25-1, both filed January 26, 2018. To resolve the differences in the proposed orders, a hearing was held on January 30, 2018. Taking into account the results of that hearing, and for good cause shown, the court adopts the following directions for the management of the upstream cases through the initial jurisdictional phase of proceedings:

    1.    This Order applies to all cases presently and subsequently filed in this court that are identified as upstream cases in *In re Upstream Addicks and Barker (Texas) Flooded-Control Reservoirs*, Sub-Master Docket No. 17-9001L. This Order is intended to supplement, and not to replace, the court's prior Management Orders entered in Master Docket No. 17-3000L.[1]

    2.    Two master complaints have been filed for the upstream cases, *viz.*, a Master Amended Complaint for Upstream Plaintiffs, ECF No. 18, and an Amended Individual Upstream Master Complaint, ECF No. 17. Both were filed on January 16, 2018. The filing of a single answer, or other responsive pleading, to the Master Amended Complaint for Upstream Plaintiffs by the United States shall serve as an answer to the common legal and factual issues contained in the two Master Complaints. The United States' obligation to answer or otherwise respond to the

---

[1]See Management Order No. 1 (Oct. 31, 2017) (establishing the Master Docket), ECF No. 1; Management Order No. 2 (Dec. 5, 2017) (establishing the Sub-Master Docket for Upstream Claims), ECF No. 103; Management Order No. 4 (Dec. 21, 2017) (assigning a judge to the Sub-Master Docket for Upstream Claims).

The term "Upstream Lead Counsel" means counsel appointed as Upstream "Co-Lead Counsel" and "Of Counsel" in the Order of Nov. 20, 2017, ECF No. 68, in Master Docket 17-3000.

Amended Individual Upstream Master Complaint is suspended until further order of the court. The United States' obligation to file answers, motions to dismiss pursuant to Rule 12 of the Rules of the Court of Federal Claims ("RCFC"), or other responsive pleadings to complaints other than the Master Amended Complaint for Upstream Plaintiffs shall be suspended pending further order of the court.

3. All complaints other than the Master Amended Complaint for Upstream Plaintiffs, whether pre-existing or hereafter filed are administratively stayed pending further order of the court, except for providing Test-Property Selection Information as per paragraph 5 *infra*. Plaintiffs in these stayed actions are relieved of the responsibility to: (i) provide initial disclosures pursuant to RCFC 26(a)(1); (ii) respond to the United States' motions for more definite statement; and (iii) respond to the United States' motions to dismiss pursuant to RCFC 12. The claims of any plaintiffs later added to the Master Amended Complaint for Upstream Plaintiffs by amendment are not stayed, and such plaintiffs must meet any discovery and other obligations under the Rules of the Court of Federal Claims, including providing initial disclosures and responding to subsequent discovery requests.

4. By January 30, 2018, Upstream Co-Lead Counsel shall have served on the United States a spreadsheet containing the following Test-Property Selection Information for the plaintiffs named in the Master Amended Complaint for Upstream Plaintiffs and in the Amended Individual Upstream Master Complaint:

   a. Name of Plaintiff(s);
   b. Address of Plaintiff(s)' real property that allegedly flooded as a result of the U.S. Army Corps of Engineers' Operations of the Addicks and Barker Dams and Reservoirs ("hereinafter the "Property");
   c. County Property Parcel Identification Number;
   d. If known, the date, timing, and extent/amount of Property Flooding during Tropical Storm Harvey;
   e. If known, the date and extent of previous Property flooding (if any);
   f. As of August 24, 2017, whether the Property was located in the 100-year flood zone; the 500-year flood zone; or no known flood zone;
   g. When the Property was purchased or leased;
   h. The elevation of the property, including the source and date of the information used to determine the elevation;
   i. The nature of Property interest (e.g. residential, commercial, industrial, owner, renter);
   j. Is the Property currently listed on MLS for sale;
   k. Has the Property been sold since Hurricane Harvey; and
   l. Was there flood insurance for the Property during Hurricane Harvey.

5. A manageable number of bellwether properties shall be identified and designated as Test Properties, such that they might provide a factual basis for disposition of jurisdictional issues, and potentially of fundamental liability issues, in these upstream cases. To that end,

a. By 4:00 p.m. CST on February 2, 2018, in furtherance of the Parties' ongoing efforts to select Test Properties by agreement, Upstream Co-Lead Counsel shall serve on the United States a list of ten properties (and plaintiffs) proposed as Test Properties by Upstream Co-Lead Counsel.
b. By 5:00 p.m. EST on February 14, 2018, the United States shall serve on Upstream Co-Lead Counsel a list of not more than 45 additional properties that shall be candidates for designation as Test Properties.
c. By 4:00 p.m. CST on February 20, 2018, Upstream Co-Lead Counsel shall respond to the United States' listing of additional candidates, providing among other things Test Property selection information as shown in paragraph 4, *supra*.
d. Thereafter, Upstream Co-Lead Counsel and counsel for the United States shall confer regarding the selection of Test Properties and shall endeavor to designate not more than fifteen such properties by a joint notice filed with the court on or before February 28, 2018.

6. Each plaintiff who owns or leases a designated Test Property shall provide a completed and signed version of the Fact Sheet attached as Attachment A, consistent with the requirements of RCFC 33(b)(5), within 30 days of submission of the spreadsheet identified in paragraph 4, *supra*. For any plaintiff, the answers and commentary their signed Fact Sheet shall be treated as answers to interrogatories and, as provided in RCFC 33(c), can be used to the extent allowed by the Federal Rules of Evidence.

7. Upstream Co-Lead Counsel and counsel for the United States shall meet and confer for the purpose of drafting mutually-agreeable Short Form Complaints adopting the Master Amended Complaint for Upstream Plaintiffs. On or before February 8, 2018, Upstream Co-Lead Counsel and counsel for the United States shall provide the Court with either: (i) an agreed proposed Short Form Complaint(s); or (ii) their respective proposed Short Form complaint(s).

8. Once accepted procedurally by the Court, presently- and subsequently-filed cases may adopt the Master Amended Complaint for Upstream Plaintiffs by filing a Short Form Complaint in *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, Sub-Master Docket No. 17-9001L. Nothing in this Order shall prevent an attorney from filing a single Short-Form Complaint on behalf of multiple plaintiffs.

9. The United States need not answer any complaint or newly-filed complaint other than the Master Amended Complaint for Upstream Plaintiffs, or specifically respond to any claim not asserted in that Master Complaint, until further order of the court.

10. The United States' responsive filings under RCFC 12, including any answers or motions to dismiss, shall apply equally to any complaint adopting the allegations of the Master Amended Complaint for Upstream Plaintiffs.

11.     Co-Lead Counsel shall facilitate, coordinate, and effect all communications with the United States on behalf of all plaintiffs in this consolidated action, all *pro se* plaintiffs in this consolidated action, and all attorneys who have not been designated as Co-Lead Counsel in this consolidated action. Attorneys who have not been designated Co-Lead Counsel are directed to communicate with Co-Lead Counsel, and not the United States or the Court, concerning discovery, case management, scheduling, and all other case-related matters. In the event that an attorney who has not been designated Co-Lead Counsel seeks to submit a motion or any other filing to the Court, such attorney must first request and obtain leave from the Court.

12.     All discovery on behalf of plaintiffs in this consolidated action must be served by Upstream Co-Lead Counsel on the United States' attorney-of-record. Upstream Co-Lead Counsel shall provide, facilitate, or coordinate the use of translators, if necessary, and shall be entitled to recover reasonable fees as approved by the Court for such translators. All discovery on behalf of the United States in this consolidated action shall be served on Upstream Co-Lead Counsel.

13.     Service upon Upstream Co-Lead Counsel is accomplished by serving each of the following via electronic mail, file sharing link, and/or United Sates Mail:

> Armi Easterby at aeasterby@williamskherkher.com
>
> Daniel Charest at dcharest@burnscharest.com
>
> Ian Heath Gershengorn at IGsershengorn@jenner.com
>
> Charles Irvine at charles@irvineconner.com
>
> Larry Vincent at lvincent@burnscharest.com
>
> Vuk Vujasinovic at vuk@vbattorneys.com

14.     All requests for discovery, including, but not limited to, interrogatories and requests for production, should, to the extent possible, be jointly submitted from upstream and downstream Co-Lead Counsel to avoid duplicative requests of documents, streamline the response process, and ensure upstream and downstream Co-Lead Counsel receive the same information. Upstream Co-Lead Counsel will coordinate and serve upon the United States responses to any discovery requests served by the United States.

15.     Plaintiffs' Co-Lead Counsel shall cross-notice all depositions in both the 17-9001L and 17-9002L Sub-Master Dockets, and, to the extent practicable and consistent with their respective duties as Co-Lead Counsel, and as attorneys representing plaintiffs, coordinate the conduct of depositions among upstream and downstream Co-Lead Counsel so to avoid duplicate examination.

16.     In any case filed and consolidated into this Sub-Master Docket after entry of this Order, Upstream Co-Lead Counsel shall provide a copy of this Order to the attorney representing the plaintiff(s) or, the plaintiff(s) if such plaintiff(s) are proceeding *pro se*.

It is so **ORDERED**.

                                      s/ Charles F. Lettow
                                      Charles F. Lettow
                                      Judge

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Sub-Master Docket No. 17-9001L

**IN RE UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS**

**THIS DOCUMENT RELATES TO:**

**ALL UPSTREAM CASES**

## FACT SHEET

**COMPLETE EACH OF THE FOLLOWING. IF YOU DO NOT KNOW THE ANSWER TO A QUESTION, PLEASE AFFIRMATIVELY INDICATE YOU DO NOT KNOW THE ANSWER.**

1. Name of Plaintiff(s): _____

2. Address of Plaintiff(s)' real property that allegedly flooded as a result of the U.S. Army Corps of Engineers' operations of the Addicks and Barker Dams and Reservoirs (hereinafter the "Property"):

   _____

3. Location of any personal or other property allegedly taken as a result of the U.S. Army Corps of Engineers' operations of the Addicks and Barker Dams and Reservoir, if present at a place other than at the real property identified in paragraph 2 above: _____

   _____

   _____

4. County Property Parcel Identification number[1]: _____

---

[1] County Property Parcel Identification Numbers are available at Fort Bend Central Appraisal District, http://fbcad.org and Harris County Appraisal District, http://hcad.org.

5. If known, describe the date, timing, and extent/amount of Property flooding during Hurricane Harvey (i.e. how deep was the water over time, and how much, and what parts of your property did it cover):

    _____

    _____

    _____

6. If known, describe the date and extent of previous Property flooding (if any):

    _____

    _____

7. As of August 24, 2017, was the Property located in: the 100-year floodplain_____; the 500- year floodplain____; no known floodplain_____.

8. When was the Property purchased or leased by you, or do you have some other type of property interest

    _____

9. What is the elevation of the Property according to this website[2]?

    _____

10. Do you have additional information regarding the elevation of the Property (*e.g.*, measurements taken for insurance purposes or a floodplain certificate)? If so, please provide the source and date of the information used to determine the elevation.

    _____

11. Nature of Property interest (check all that apply): residential_____; commercial____; industrial____; owner____; renter_____.

---

[2] Elevation information is available at Google Map Developers, Elevation Calculator, https://www.mapdevelopers.com/elevation_calculator.php.

12. Condition of Property at time of acquisition (i.e. vacant, improved, partially improved):

   _____

   _____

13. Is the Property currently listed on MLS for sale?

   _____

14. Has the Property been sold since Hurricane Harvey?

   _____

15. Was there flood insurance for the Property during Hurricane Harvey? Yes____ No ____


Plaintiff(s) Name:
_____

Date:
_____